Our second argument of the morning comes in appeal number 23-1806, Carl Schneider v. Chris Schneider. Okay, we have Mr. Simon and Mr. Polin. Okay, nice to see both of you. Mr. Simon, whenever you're ready. May it please the court. My name is Jake Simon. I'm from DeWitt LLP and I'm proud to represent the defendant appellant Chris Schneider. This case arises, and a few cases before it with similar captions arose, from tensions between shareholders of a family-owned car dealership, hybrid car store. It was formed in the 70s by Chris's father, and Chris has been the general manager since the 1980s. And over time, Chris became the majority shareholder, and the majority shareholder is now Chris's parents' trust. And that's the appellees or the trustees of that trust, which I would just refer to as the trust. And there are four issues on appeal, the first two of which relate to the trust claims regarding loans Chris took from the company. The first issue is whether the district court erred by requiring Chris to prove the trust damages on this claim through a misapplication of the wrongdoer rule. Mr. Simon, I assume you've seen the motion for supplemental briefing on jurisdictional issues. Yes, I have. Would you like to respond to that in writing or now? Preferably both. I do have some words I could say today. What I wanted to say is, addressing the cases that were cited there, I don't want to cite anything. Well, explain to us, I think you're entitled to an opportunity to do that in writing, but it would be helpful to me if you could explain on what basis Chris is able to file a notice of appeal that gives us jurisdiction to consider any parts of the judgment that were directed only against the corporation. Yes, I think it's because Chris was aggrieved by this judgment. I mean, basically the corporation is about to be wound up. That's the result of the judgment. I understand he's hurt in his role as a shareholder, but we're talking about hundreds of years of Anglo-American law that distinguishes between shareholders and corporations. My understanding is that he would be able to appeal because he's going to have direct pecuniary harm here. At the end of the day, he's... In any way other than as a shareholder? I don't believe so. I don't think so either. No. I wanted to address some of the cases that were cited by the appellees. I mean, the first argument was basically that a party needs to be named in the notice of appeal for jurisdiction, and Chris is named. He's clearly entitled to appeal the parts of the judgment that were against him personally. I don't think anybody disputes that, but okay. Yes, and they cite a case to the proposition that one who is not a party to a record in judgment is not entitled to appeal therefrom. In that case, the union was just not a party to the case whatsoever. Chris is a party to this case. If we look at these claims that these issues are brought on, it's claims one through eight in their complaint, and they were named. The first two were against Chris and the company. The next six were against just Chris. I'm focusing on the elements of the judgment. That's what you appeal. Okay. I think as a practical matter, the judgment was entered against the corporation for collection purposes, essentially. It would be easier to collect it from the money that was going to come into the company rather than to try to collect it from Chris. Well, we'll wait. I'll tell you what. Rather than have you do this on the fly, it might be best if you try to write this down, and we'll issue with my colleagues agreement if we have that, give you an opportunity to do that. They're jurisdictional issues that should have been raised much earlier, but we can't really avoid them. Understood, and I appreciate it. I would like to just address that first issue, the loans issue. I mean, the wrongdoer rule applies when somebody creates a dart of evidence, and then you can't precisely estimate damages. The wrongdoer rule applies when somebody commits a wrong, and it's hard to figure out what the consequences are. I think where your brief goes a little bit off target is where you suggest that Chris was not responsible for the recordkeeping problem, and I don't think he was. The problem is he is responsible for the wrongdoing, for the wrongful indemnification. And in that situation, then the uncertainty will be held against him. Could I ask, at least that's my understanding of that body of law, could you tell us what you think the right number would be? I've seen numbers between 50 and 95%. I think the number would be closer to 50 than 95%. I think this is an inherently difficult thing to get precise, and I've cited some cases to that effect. It's essentially an estimating situation. You know, attorneys typically don't bill by claim. They bill by task. So, you know, Chris testified regarding mediation. Like, mediation involved all the claims in the case. Some portion of that involved the properly indemnifiable cases. And, you know, Chris did not know he was committing a wrongdoing. He was advised that he could take full indemnification. Maybe that was not great advice, but nevertheless, he did not, you know, intend to do anything wrong. And the other thing is that the wrongdoer rule doesn't result in flipping the burden of proof. It just results in relaxing the standard of proof. And so, you know, if there were some ambiguity about how much of a bill would be properly indemnifiable, I think that's fair to, you know, resolve that ambiguity against Chris under that rule if he were indeed to have committed wrongdoing. But I don't think it's clear that he had committed wrongdoing in the first instance. So that's most of what I have to say on that issue. But in effect, isn't that, I mean, what district court did was the district court said that the plaintiffs had the burden to show damages. But here, because Chris is the wrongdoer, quote, unquote, and he had the ability to, he was in the better position to be able to address the, or make the record more clear on this issue that the company was basically entitled to everything unless Chris proved otherwise. Now, that doesn't seem to me to be changing the burden of proof in the first instance. It's requiring Chris to basically mitigate the damages or show why the damages should be less because a portion of it was based only upon, you know, the claims against him. I think that the evidence that was presented shows that some portion of these fees were for properly indemnifiable claims. And the court did exclude the $8,000, right? That was from a separate case. That was not from the state court action. That was from the other federal action. There was $0 from the state court action, and that case went to trial, and there's records from that case in the record. On the next issue, that's the dealership improvement issue. Since 2013, this was an issue between the parties. In the state court action we just discussed, it's mentioned in the court's findings of fact. Yeah, the hard, I don't, this is one I really, I'll confess, I don't understand this at all because this is the roof repairs, right, at the car dealership? Yes. Okay. All that was wrapped up in litigation in state court sometime in what, 16 maybe, 16, 17? So it was not really wrapped up in the state court. In the federal court. There was state court litigation that there was a judgment of dismissal entered, I don't remember what year, 16 or 17. That's the federal action, yes. Okay, the federal, okay. All right, this claim in the new round of this litigation is about the preparation of a falsified promissory note. The preparation of the falsified promissory note, I guess it relates to the repayment of the financial obligations related to the roof, but it's completely disconnected in time. The falsified promissory note was prepared in 2021. I don't understand how it could be precluded by litigation that predated it. Like, ipso facto, how could it be precluded? Chris, I mean, because when we look at claim preclusion, you're looking at motivation. I mean, Chris was trying to get the trust to pay for these repairs. In the federal court. By falsifying a promissory note. Well, in the federal action, that was brought because Chris put an accounts receivable on the book of the company, and he was challenged for that action. That case was dismissed with prejudice. He changes it to a notes receivable. He said in testimony in this case that he didn't know what he should call it, but that the trust should pay. I mean, the motivation is the same. It's the same dispute. I've never heard of motive being an issue in claim preclusion. I've never heard of that either. It's in the restatement, second of judgments, section 24. Say what? Restatement of judgments, section 24.  Motive is an element of claim preclusion? It's something that is considered, I believe, the time, space, motivation, and one other thing was mentioned there. But I've also cited a case where there's a property boundary dispute that case 20 years later that that time was still okay. I mean, it's the exact same parties. The dismissal of prejudice in the federal action is final judgment on the merits, and it arises out of the same issue, which is who should be responsible to pay for these repairs. So I think all the elements are satisfied. The problem is the issue is not about the roof, and the issue is about, as Judge Hamilton just observed, about the falsification of a promissory note. We're not here disputing how much did the roof repair cost and who contracted for it. That's not what this is about. I believe that the promissory note was not even signed. It wasn't even presented to Chris's father. Well, now we're into merits issues. I'm all hung up on the timing. The promissory note issue happens in 2021. I just have a very hard time seeing how, as a matter of law, it could be precluded based upon litigation that terminated in 2016. That's the part I can't get past. It's five years earlier. He didn't know for certain that he could charge that money until after that case was dismissed with prejudice in his mind in 2016. Whose name was signed to the promissory note? I don't believe any name was signed to the promissory note. It's not like the word fabricated was used. I think that's to say there's not really an agreement, but there was a document, just like the accounts receivable. I don't think there's a real distinction between the two items. Before we use up more of your time, Mr. Simon, it would be helpful for me if you could explain to me why you think the district judge's finding of intent on the civil theft charges, on the three incidents in question, were clearly erroneous. I understand your client disagrees, but given the standard of appellate review, that would be helpful. Yes, the whole dismissal with prejudice, that's the big portion of that, this dealership improvement issue. Chris talked a few times during the trial about it was a dismissal with prejudice. Yes, and the district judge was not required to believe him. Was he? No. Okay, so tell us why you think this was clearly erroneous. I think it wasn't even considered, and I think he was required to consider it. That's on the dealership improvement issue. On the rent assistance issue, there's testimony from the plaintiffs in the case that this lease was never assigned properly to the new buyer of the dealership. So there's two different pieces of paper, one saying that the dealership, the company, should be paying it, which is who paid it, and then there's another that's saying Chris has to pay the other, the new owner, $15,000 per month. So there's an ambiguous situation, and we're not challenging the beginning portion of the judgment where that money, that constructive dividend, goes back to the trust. We're only challenging the civil theft finding, that Chris knew that was an issue. But didn't he keep it? I mean, he didn't tell the trust about it, right? He did not at first because he didn't think that the dealership sale would go through if that were to happen, and then he actually, before judgment, Right, well, but hold on for a second. He didn't tell the trust because he thought the trust then wouldn't agree to the transaction, and so why isn't that fraud? I don't have a good answer for that. I would like to point out that Chris did pay back that rent assistance money to the trust, and he attempted to pay back the lacrosse judgment that was paid personally, and I'd also, since I'm running out of time, just like to say that I think the math issues, when he took money from the company to pay something, it's effectively 62.5% his money, so I think that how the math struck out here, Chris ended up overpaying in all instances, and then he got. Did you ever present that to the district court? No, it was consistently argued that they should get a proportional share in how the. Right, so when the judgment came out, the judgment first came out. It later got amended. There was one item corrected. Did you ever point out, hey, Judge Peterson, the math is off here, according to my client or in my client's view? Not to my knowledge. Right, okay. We'll give you a minute on rebuttal. Thank you. Okay, and let's hear from Mr. Poland. Good morning. Good morning, Your Honors. May it please the Court. Doug Poland on behalf of the plaintiff's appellants. Your Honors, I'd like to begin my argument with an apology, an apology for submitting our supplemental brief and our motion to file it so late. The arguments, the jurisdictional arguments are arguments that we should have included in our response brief, and we did not. I apologize for that. We did bring them to the Court's attention as soon as we learned that we had overlooked them. Your Honors, the Court should affirm the amended judgment in full and should remand the case to the district court for a decision on a reasonable attorney's fees and costs award to the plaintiff for defending this case in appeal. There are really only, there really only is one live issue in this appeal, and that's paragraph two of the amended judgment. As the Court pointed out before, there is an amended judgment, and that is what is on appeal here. It consists of five paragraphs, and only one of those paragraphs, paragraph two, that's the civil theft finding. This is record item number 187, the amended judgment. Only paragraph two is still alive. That's the civil theft finding. I'd like to point out, and I believe that counsel conceded this, that the items in paragraph three, which is judicial dissolution, paragraph four, the appointment of a receiver, those are no longer at issue. Those are not challenged on appeal. And then paragraph number five also did not appear in our brief as an issue, but they're challenging, and in fact, that reimbursement, the district court ordered that to be paid as a commensurate pro rata dividend to the trust. That was paid, and that was part of a judgment that has been satisfied. That judgment has been satisfied. Well, tell me what part you're referring to there. Sure, Your Honor. That's paragraph five of the amended judgment. Okay, I see it. I got it. Yeah, reimbursement for the legal fees. Yeah. And so, that really takes me to paragraph one, or 1A, and the identification issues. And I can address those now if Your Honors would like, or if you'd prefer to just have me stand on the brief, given the fact that counsel hasn't yet had an opportunity to write a written response, but I'm happy to present those arguments now as well. On the standing issue? This is the standing issue. Standing, mootness, advisory opinion. Yeah, no, I understand. I read it. Yeah. Okay. It's up to you. Yeah, happy to address those, Your Honor. Really, and just I'll be very brief on it. This is paragraph one of the amended judgment, right? That was brought, that was entered, I should say, the amended judgment. It's very clear. Hybrid car store, Inc., is to pay an amount of money to the trust, comprising, and then there are four different elements, A through D. That's an order to hybrid car store. Hybrid car store had a receiver. The appointment of the receiver was never appealed, and the receivers did not want to participate in the appeal. Chris Schneider had caused the corporation to appeal in the first place, and he didn't have the authority to do it. So the receiver moved to dismiss the appeal. We joined in that motion as well and supported it, and this court dismissed that appeal a year ago. So hybrid car store has never been a part of this appeal for all practical purposes because there was no authority that Chris Schneider had to be able to file an appeal on his behalf. So that is the only part of the judgment, paragraph one. I should say hybrid car store is the only, right, the only party against whom that judgment was entered. So this gets to our first argument that there is under Federal Rule of Appellate Procedure 3C, yes, it's true, hybrid car store and Chris Schneider were both named in the notice of appeal, but only hybrid car store was subject to paragraph one of the amended judgment. And it really never should have been a part of this appeal, and it essentially wasn't because there was no authority Mr. Schneider had to be able to institute an appeal on his behalf. Second of all, Chris Schneider has no standing to challenge paragraph one. He doesn't have an interest, I think as Judge Hamilton had pointed out, other than as a shareholder, and that's not a sufficient interest to be able to appeal a judgment entered against a completely different party. Number three, there is a mootness issue here as well. As we noted in our brief, there has been, there have been proceedings in the district court since the time that the briefs were, briefing was completed. There has been a final distribution of money by the receiver. There has been a complete satisfaction of paragraph one in the amended judgment. My clients have been paid fully by the corporation, and they filed a satisfaction of judgment. That judgment has been completely satisfied. And so there is a, there is a mootness argument there as well. There's a mootness issue. Mr. Poland, can I ask you to bring us up to date on a couple of other aspects that maybe this is implicit in what you've just told us, but as I recall the transaction with Dahl for the sale of the dealership, there was supposed to be a big balloon payment made in 2024. Was that made? The balloon payment was made, Your Honor. Yes, it was made, I believe it was in March of this year, 2024. So that essentially then all of Hybrid Car Sales Inc's assets were cash at that point. That's correct, Your Honor. And those have been distributed now to the shareholders? They have, Your Honor. Okay. So does that mean, I think I understood your points in the briefing about this unusual provision that would have allowed Chris to buy Carl's stock in the event of Carl's death at a fixed price, regardless of other financial circumstances. Are those issues basically moot now because of the dissolution and  I think that they are, Your Honor. Okay. Yes, I believe that they are. All right. And as a matter of fact, just to add one other fact to the distribution, there also have been, and there's been briefing among the parties on this, and this was part of Judge Peterson's, the distribution plan that Judge Peterson approved quite recently, as a matter of fact, just in October. There was money that the trustee paid to the trust, paid, I'm sorry, that the receiver paid to the trust, paid to my clients, to satisfy part of the judgment debt that Chris Schneider owed to my clients. And so as a matter of fact, as of right now, all but $144,000 of the judgment that my client, the trust has against Chris Schneider has been satisfied. Yeah. This is a very helpful dialogue. Can I just ask you one question? Of course. It's running through my mind. You can tell me. Okay. The receivership issues are not in any way before us on appeal, correct? They are not, Your Honor. Okay. And that's embedded in that exchange that you just had. Because everything is, you know, final, all caps, final, with respect to the winding up of the corporate affairs and the transfer of all equity interest to Dahl. Not quite all wrapped up, Your Honor. There is a receiver, a final report that's due, I believe, on December 20th. Okay. But like fee related? No, not fee related. They're related to the report is, I believe, that it's intended to identify whether there's anything left. There was a tax liability that came up in the middle of the summer, and so my clients had to give back some of the money they got from the receiver. So there's some collateral, some kind of collateral issues. There are. Not issues to the core of what we're talking about. No, Your Honor. Okay. Thank you. That's helpful. Yeah. If I could quickly address, I think I mentioned Federal Rule of Appellate Procedure 3C, standing, mootness, and then advisory opinion as well as we lay out. Flip side of the mootness coin, any kind of a ruling the court would make now on the indemnification issues would really be an advisory opinion because it can't affect the judgment below, the amended judgment below. They're moving along to respond to a few of the points that opposing counsel made. In terms of the dealership improvements, and it certainly sounds like the court understands that there's a timing issue there, I would like to point out that in the supplemental appendix that the appellant provided, there is a copy of the complaint that we filed in the federal case in 2015. I'm sorry, 2016. 2015. What that made very clear was the civil theft claim that we brought at that time had to do with past distributions that Chris Schneider caused the corporation to withhold from my client. We identified about $46,000 in past distributions before 2015. That was the basis for our civil theft claim. As a matter of fact, and again, this is noted in the complaint as well, the allegations that we set out. There was the receivable that was put on the books at that time, as of 2013, I believe, was actually $85,000. When we look now at the basis, and this shouldn't matter at all really because as the court has pointed out, the claim is based on actions that happened in 2021 as opposed to what it is. Yeah, and those actions in particular, correct me if I'm wrong here, are the assertion of fraudulent activity so as to impose a liability or put Carl Schneider under a liability with respect to the coverage on the roof issues. That's exactly right, Your Honor, and the point that I was going to make is that the amount of this fraud, and it really was a fraudulent promissory note. Chris instructed the corporation's accountant who also was his personal accountant. We don't have to take your word, right? I don't say that disrespectfully. We have findings on this. We have findings on this, Your Honor, and it was also in testimony from the accountant, from Chris Schneider himself. I mean, this was all two days worth of testimony in the bench trial in front of Judge Peterson, but the amount of that promissory note, that fraudulent promissory note that Chris created to come from Carl Schneider, or no resemblance, or it had nothing to do with the same amounts. It was a completely different total than the amounts that were at issue in the 2015 lawsuit. I mean, if the court were to countenance what Chris Schneider's trying to get away with here, the sky's the limit. I mean, he could make up a fraudulent promissory note for $500,000, say that that's due from Carl, and that it's for whatever kinds of charges he wants to put onto it. So it's just a non-starter, because even if the underlying debt were valid, he used an invalid method to try to collect it, and that's the point. On the math issues, this one is, this is a pretty easy one. These are not errors in math, and there are two points I'd like to make. Number one, the court asked the question. Is that issue even before us,  I don't think that it probably is, Your Honor, but just to address it very quickly, the amended judgment was entered because Chris Schneider's counsel asked for it to be entered and asked for one of the numbers, at least the $90,000 to be altered. That's his number. That's the number he asked for. It was a docket entry, wasn't it? It was a docket entry. That got adjusted. That's the only thing that got changed. That's the only thing that got changed, but it was also done at Chris Schneider's request. That's his number. Now he's coming back and trying to attack his own number on appeal, which doesn't make any sense. The reason that these numbers are, these are not mathematical errors, the problem is that we've got two shareholders here, Chris Schneider, who is a 62.5% shareholder, and my clients, the trust, who are a 37.5% owner. If you're trying to figure out what a constructive dividend is, you look at the amount that Chris got. That's 62.5% of the total dividend. You use the total dividend to calculate what my client's shares should have been, or their distribution should have been, 32.5% of that. That's what was paid, and that's accurately reflected in the amended judgment as well. I don't think that I have any other points to make, unless your honors have any questions of me. Okay. Not hearing any, Mr. Poland, thanks to you. Thank you, your honor. Mr. Simon, do you have time left? Yeah, we'll give you a minute. Thank you. I just wanted to say regarding the amended judgment, Mr. Schneider got corrected the overall amount of the rent assistance. It wasn't about the proportionality issue. That's what was changed there. And if the proportionality issue wasn't sufficiently raised below, the court could still address it to prevent a miscarriage of justice under, under seventh circuit and Supreme court law, which was cited in my brief. Another thing I'd like to mention is that the dealership improvement issue, I think if you look at that complaint and also opposing counsel, just cited a number of 85,000, the relief requested in that case was for an order rescinding the assessment of $129,607 account receivable to Carl Schneider. And if you look at their allegations, they say that Schneider and his capacity as the general manager of the company ordered and directed the accountant for motor works to assess the placement of parking lot maintenance to Carl Schneider in the form of an account receivable. So really all that's changed is it went from an account receivable to a note receivable. I think that's not, can I ask one quick question, Mr. Simon? And that is one of your, in your opening brief, you challenged the district court's assessment of attorney's fees that occurred about eight months after the final judgment was entered. Yes. Just on only on the basis of if Chris prevails here, that should be reassessed proportionately. Nothing about the reasonableness of the fees. The question is, was, did you file a new notice of appeal? I didn't see one. No, I did not. How do we have jurisdiction over that award? I think it's, I think it's just because it's, it's based on the, that award was based on the merits decision, which is what we're doing. You need to file a separate notice of appeal to bring such a separate order before the court. Thank you. Okay. Thank you. Okay. Thanks to both council. We'll take the appeal under advisement.